Tecon Corporation, Plaintiff, Appellee, and Appellant, *v.* Secretary of the Treasury, Defendant, Appellant, and Appellee.

No. 12287. Decided December 27, 1961.

*J. B. Fernández Badillo,* Secretary of Justice, *Arturo Estrella* and *Carlos G. Látimer,* Assistant Secretaries of Justice, for defendant and appellant. *James R. Beverley* and *Carmen B. Hernández* for plaintiff and appellee.

Division composed of Mr. Justice Pérez Pimentel as Chief Judge of Division, Mr. Justice Santana Becerra and Mr. Justice Rigau.

Mr. Justice Pérez Pimentel delivered the opinion of the Court.

During the years 1952 and 1953, Tecon Corporation introduced into Puerto Rico, machinery, tools, house trailers and equipments, parts and accessories for the same to be used in the work it was carrying on at Ramey Air Base in Aguadilla. After having paid the sum of $37,345.38 as excise taxes, it requested from the Secretary of the Treasury

the refund of the same,[1] but only a refund in the amount of $526.63 was granted.

The taxpayer went to the Superior Court and after a hearing on the merits, the said court rendered judgment granting the complaint as to the compressors propelled by diesel oil and as to the house trailers, and dismissing the complaint as to the other items.

The Secretary of the Treasury brought this appeal against that part of the judgment which grants the complaint as to the two points mentioned above.

In the first place he maintains that the Superior Court erred in deciding that the house trailers were not taxable under subdivision 8 (a) of the old Internal Revenue Law (13 L.P.R.A. § 1040), as amended up to the date of the introduction into Puerto Rico of the house trailers.

Under the original Internal Revenue Law (Act No. 85 approved May 20, 1925, as amended) vehicles which were not self-propelling were not taxable. In spite of the fact that subsections 7 and 8 of § 16 of the said Act mentioned "auto bodies without motors" and "tractors without motors" as being taxable, we decided that certain semitrailers were not taxable. *P. R. Iron Works* v. *Buscaglia, Treas.*, 62 P.R.R. 839; *Compañía de Ferrocarriles* v. *Buscaglia, Treas.*, 63 P.R.R. 49.

By Act No. 116 approved May 12, 1943 (Sess. Laws, p. 334), a new subsection 8(a) was added to § 16 which taxed

---

[1] The taxpayer based its claim for refund on the following facts: (1) the excise taxes collected represented a tax on imports, which is forbidden by law; (2) the tax was imposed exclusively on the introduction of the articles and appliances, the use of such equipment not having been taken as a basis for the imposition of excise taxes; (3) the tax laws of Puerto Rico do not apply in the federal area of Ramey Base, to which Public Law 819 (76th Congress, October 9, 1940, H. R. 6887) does not apply; (4) the machinery and equipment of the caliche (crusted calcium carbonate) industrial plant was exempt from taxes; (5) the compressors propelled by power other than electric power, that is, the compressors propelled by fluid gas, were not taxable; the paving breakers are not taxed by the Excise Tax Act, and (6) neither are the house trailers taxed by the said Excise Tax Act.

"all vehicles not self-propelling. . . excepting vehicles expressly manufactured to be drawn by human or animal power . . ." Subsequently this subsection underwent some amendments, but it was not until the year 1947 that trailers and semi-trailers are expressly mentioned as taxable vehicles.[2] Said subsection, which is the law applicable to this case, provided as follows:

"§ 1040.—Vehicles not self-propelling

"On all vehicles not self-propelling, excepting vehicles expressly manufactured to be drawn by human or animal power, and cars or carts expressly designed to be drawn by mosquito tractors, 'jeeps' and other similar vehicles for the hauling of agricultural products within the farm, sold, transferred, or used or consumed in, or introduced into, Puerto Rico, a tax of ten (10) per cent on the selling price in Puerto Rico; *Provided,* That trailers and semi-trailers sold, transferred, or used or consumed in, or introduced into, Puerto Rico, shall be subject to a tax of fifteen (15) per cent on the selling price in Puerto Rico." (13 L.P.R.A., page 671.)

In describing the trailers which were the object of the imposition and collection of excises in this case, the trial court stated:

"The small dwellings we are dealing with were taken, already made, on their own wheels attached to and rotating around axles which are fixed to the lower frame of the structures themselves. Such contrivances were in fact dwellings, *basically and principally,* even though they had certain characteristics proper to vehicles—that is, to carriages relatively *easy* to be moved on the surface of the earth which are fit for and are customarily used in the *transportation of persons or things.*

"The devices concerned do not combine the conditions effectively appropriate to do this last thing in an efficient and economical manner. What can be transported in them, *once in a while,* is the few pieces of furniture which, for living purposes are contained in them. The uncomfortable features found in them, such as their sink, stove, cupboard, etc., are permanent parts of the same. More than anything else they are luxurious

---

[2] Act No. 425 of May 14, 1947.

substitutes for tents. It is as such tents or barracks that they are principally used.

"They do not have the conditions that are suitable for *true* dwellings, other than the dwellings existing in the slums. They are special types of barracks used in *camps* for employees working on construction jobs, in areas which, ordinarily, are far from urban zones.

"But the special features which characterize them and their discomforts as dwellings for long periods of time, do not turn these contrivances into the *vehicles* which, in our opinion, the *legislator had in mind* in approving § 16(8)(a), *supra*." (Page 19, T.R.)

The determination of whether or not the house trailers were taxable under the Internal Revenue Law, cannot rest on the use to which they were principally put. While the evidence of plaintiff tried to show that the house trailers were set on concrete blocks at Ramey Base and had such facilities as electricity, water and sewage systems, it is no less a fact that they were introduced into Puerto Rico as carriages to be towed and that they were taken from San Juan to Aguadilla and later brought again to San Juan on their wheels, towed by self-propelling vehicles. In this way they could be taken on our roads to any part of the Island, thus giving them the use for which they had been designed, *i.e.*, towed vehicles.

■■ The legislator did not define in the law the terms "trailers" and "semi-trailers". Neither did he use Spanish words to describe them. The word "trailer" has been translated into Spanish, among other ways, as *"carro o coche remolcado"* (towed car or carriage).[3] In accordance with the definition given by Webster, the term "trailer" includes a vehicle, equipped to be used as a dwelling and towed by a passenger car.[4] There is no controversy as to the fact that

---

[3] Appleton's New English-Spanish and Spanish-English Dictionary.

[4] "Trailer. 1. ... 2. A highway vehicle designed to be hauled, esp. by an automotive vehicle, as a truck trailer or a semitrailer; especif. one

these contrivances (house trailers) are constructed so that they can be moved on their own wheels, towed by other self-propelling vehicles. They could hardly be eliminated from the classification as *trailers*. It should be noted that in mentioning trailers and semi-trailers for the first time in the 1947 amendment, they are included under the subsection covering "vehicles not self-propelling." It is explained that they are mentioned in a "Proviso" at the end of subsection 8(a) because the tax on these vehicles was greater than that set for other vehicles not self-propelling.[5]

The court erred in deciding that the house trailers introduced by plaintiff into Puerto Rico were not subject to the payment of the excise taxes stated in the Internal Revenue Law.

■ However, it did not err in deciding that the compressors propelled by diesel oil were not taxable under the Internal Revenue Law. We decided this same question against the Secretary of the Treasury in the case of *San Miguel & Co., Inc.* v. *Secretary of the Treasury*, 82 P.R.R. 657, and again in *Island Properties Co., Ltd.* v. *Secretary of the Treasury*, 82 P.R.R. 842 (1961).

The judgment of the Superior Court shall be reversed insofar as it grants the complaint for refund of the excises paid by plaintiff on the house trailers introduced by it into Puerto Rico.

---

equipped for use as a dwelling, to be drawn by a passenger automobile." Webster's *New Collegiate Dictionary; Moffitt* v. *State Automobile, Inc. Ass'n*, 300 N.W. 837.

[5] While in the amendment to subsection 8(a) of 1955 these vehicles are called by their name, calling them "house trailers", that is probably due to the fact that they had to be distinguished in some way from trailers and semitrailers since the latter were exempt from excises while the houses trailers were taxable. (See Act No. 59 of June 10, 1955.)